## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **WILFREDO TORRES MASS** <br> *personally, and on behalf* <br> *of other persons similarly situated* <br><br> Plaintiff <br><br> **vs.** <br><br> **SUPERMERCADOS MAXIMO, INC.** <br><br> Defendant | **CIVIL ACTION** |

## COMPLAINT

**TO THE HONORABLE COURT:**

The plaintiff, Wilfredo Torres Mass (hereinafter "plaintiff" or "Mr. Wilfredo"), on behalf of his own interests and on behalf of the interests of other people similarly situated, and respectfully requests a **permanent injunction**[1] against **Supermercados Máximo, Inc.** in accordance with the provisions of Rule 23(b)(2) of the Federal Rules of Civil Procedure and Title III of the Americans with Disabilities Act, and its applicable regulation.

### I.  PARTIES

1. Plaintiff's name is **Wilfredo Torres Mass**. His mailing address is: Urb. Bello Monte Calle 8 L 3 Guaynabo, PR 00969. His physical address is: Cond. Colinas de Bayamón Apto 11d carr 831 km 2.5 Bayamón, PR 00956. His phone number is: (787) 637-3372.

---

[1] A preliminary injunction is not requested at this time.

2. Defendant's name is **Supermercados Máximo, Inc.** The defendant is the owner, lessor, lessee and/or operator of the public accommodations place identified on paragraphs 5 and 6.

## II.    ALLEGATIONS

### A.  Regarding the Plaintiff's Medical Conditions

3. Mr. Wilfredo has the following conditions: Incomplete paraplegia at Lumbar levels L1 and L2.

4. As a result of these conditions, Mr. Wilfredo has substantial mobility limitations compared to the average person in the general population. For example, the incomplete paraplegia at Lumbar levels L1 and L2 significantly limits his movement, so he cannot walk, run, bend, or perform any other activity that requires physical mobility easily or without the aid of a supportive tool. Therefore, he must use a wheelchair to move around.

### B.  Concerning the Properties in Question and the Court's Jurisdiction

5. The property in controversy is a public accommodation known as Supermax located at 201 C. de la Cruz, San Juan, PR 00901-1609, with coordinates 18.465283135878728, -66.11616130880172.

6. Additionally, this petition aims to address and rectify widespread and systematic discriminatory practices, evidenced by architectural barriers found in various locations of Supermercados Supermax, all operated by the defendant, which Mr. Wilfredo knows about and therefore feels discouraged from visiting. The properties are as follows:

**San Juan**

**6.1. SuperMax - De Diego**, located at 114 Ave De Diego San Juan, PR 00907-2345, with coordinates 18.451681564375335, -66.06490265844184.

**6.2. SuperMax - San Francisco Shopping Center**, located at San Francisco Shopping Center 201 Ave. De Diego, Final San Juan, PR 00927-0000, with coordinates 18.38649506575121, -66.08188682249931.

**Guaynabo**

**6.3. SuperMax - Plaza Caparra**, located at 1498 Roosevelt Ave Carr#23 Ave Roosevelt Local #2 Guaynabo, PR 00968-0000, with coordinates 18.410994675460554, -66.10041373020549.

**6.4. SuperMax - Santa María Shopping**, located at Carr #177 Local #4 Bo Frailes Guaynabo, PR 00966-0000, with coordinates 18.378128427009926, -66.09632770110102.

**Carolina**

**6.6. SuperMax - Laguna Gardens**, located at Ave. Baldorioty de Castro Centro Comercial Laguna Gardens Carolina, PR 00979-0000, with coordinates 18.431247396510738, -66.01598803657274.

**Bayamón:**

**6.7. SuperMax - Bayamón**, located at Ave. Magnolia Esq. Calle 15 Bayamón, PR 00956-0000, with coordinates 18.37095699782004, -66.16772619389693

**6.8. SuperMax - Bayamón**, located at Centro Comercial Bayamón Gardens, Bayamón, PR 00957-0000, with coordinates 18.376313385809556, -66.17691817641833.

**6.9. SuperMax - Los Filtros,** located at Carr 177 KM 2.0 Bayamón, PR 00959-0000, with coordinates 18.384283605508344, -66.13980875529313.

**Dorado**

**6.10. SuperMax - Dorado,** located at Centro Comercial Dorado del Mar Dorado, PR 00646-0000, with coordinates 18.463298569883758, -66.27038979736065.

**6.11. SuperMax - El Paseo Dorado**, located at Carr. 696 Esq. Ave. Jose Efron Paseo Del Plata Shopping Village Dorado, PR 00646-0000, with coordinates 18.45717407680119, -66.28336030314667.

**Caguas**

**6.12. SuperMax - Villablanca Caguas**, located at Ave Jose Garrido, Bo Pueblo Caguas, PR 00725-0000, with coordinates 18.24458517034267, -66.03924900725025.

7. The defendant is the owner, landlord, tenant, and/or operator of the properties mentioned above.

**C. Discrimination Against the Plaintiff Due to Disability**

8. Supermercados Supermax is a prominent Puerto Rican company with 17 stores across the island. This supermarket chain is widely recognized for its diverse range of high-quality products, competitive prices, and attractive offers. Additionally, some of its stores feature café services, enhancing the shopping experience for customers. Supermax is committed to excellence in every product it offers. For these reasons, Mr. Wilfredo is a loyal customer of SuperMax supermarkets. He particularly enjoys purchasing their fruits and vegetables and appreciates the products available in their cafés.

9. Mr. Wilfredo visited the SuperMax supermarket, located at 201 C. de la Cruz, San Juan, on January 8, 2024, intending to purchase well-known quality products. His primary interest was to buy fruits and vegetables, such as red grapes, green grapes, and bananas, among other products this supermarket offers. These items are of particular interest to Mr.

Wilfredo due to their economical prices and freshness, so he wishes to be able to purchase this variety of products at different SuperMax locations.

10. As a result of his visit, Mr. Wilfredo identified the following architectural barriers at the SuperMax supermarket located at 201 C. de la Cruz, San Juan:

**Exterior of the Property**

a. **Lack of Accessible Route:** Mr. Wilfredo experienced significant difficulties entering the property due to inadequate accessibility. There is no accessible route allowing safe transit for a person in a wheelchair, preventing autonomous and safe access. Additionally, the main entrance is not accessible for people with reduced mobility and is not properly signaled. This lack of accessible infrastructure forced Mr. Wilfredo to face serious difficulties entering the establishment.

**Interior of the Property**

b. **Entrance Door:** The supermarket entrance has a two-leaf door that opens outward. Each leaf is very heavy, making it difficult for Mr. Wilfredo, who has limited upper body and limb strength, to open. Mr. Wilfredo, who uses a wheelchair, had serious trouble opening both leaves of the door due to their weight, preventing him from entering the supermarket independently. Additionally, the sidewalk's unevenness at the entrance aggravated the situation, forcing him to make disproportionate efforts and dangerous movements.

c. **Aisles:** Inside the supermarket, aisles, shelves, and service areas were obstructed by water gallons and other products, preventing a minimum width of 36 inches necessary for safe mobility. When trying to move through the aisles, Mr. Wilfredo encountered water gallons and advertising material blocking his way, forcing him to push them from his wheelchair to advance. This situation led him to bump his wheelchair against products in the aisle,

5

causing great frustration and exposing him to unnecessary dangers just to access the fruit storage area.

d. **Counters:** When approaching the counter, Mr. Wilfredo found more difficulties. He found the counter inaccessible because its height exceeds 36 inches, making it difficult to see from his wheelchair and to be attended by the staff behind the counter. The requirement for a portion of the counter to be accessible is also not met. There is no free space under the counter, nor is frontal approach allowed, failing accessibility requirements.

e. **Checkout:** After facing various difficulties getting the fruits and vegetables he wanted, Mr. Wilfredo went to the checkout but was again limited by the little space adjacent to the checkout. Additionally, the counter's height made it difficult for Mr. Wilfredo to place the products and complete the payment process. This shows that all checkouts are too narrow, with less than 36 inches wide, limiting Mr. Wilfredo's mobility in his wheelchair. Likewise, the counters exceed 36 inches in height, restricting his vision and communication with the cashier and making it difficult to make payments.

### Property Restrooms

f. **Toilet Area:** Upon entering the restroom, Mr. Wilfredo noticed that the space around the toilet was extremely narrow, making it impossible to make a full 360-degree turn with his wheelchair and T-shaped movements. The toilet's proximity to the sink further reduced the available space, preventing Mr. Wilfredo from maneuvering his wheelchair adequately. This inadequate bathroom layout not only significantly limited his ability to use the facilities independently but also increased the risk of accidents, compromising his safety and comfort.

g. **Flush Control:** The flush control is incorrectly located, as it should be on the open side of the toilet, but it is on the opposite side.

6

h. **Grab Bars:** When attempting to use the toilet, Mr. Wilfredo found no support bars to allow a safe transfer from his wheelchair to the toilet, making it impossible to use. This absence of support bars not only compromised his safety but also prevented him from using the facilities independently and with dignity, highlighting a severe deficiency in bathroom accessibility.

i. **Toilet Paper Dispenser:** The toilet paper is not located to ensure continuous flow, making it difficult for a person in a wheelchair like Mr. Wilfredo to use it.

j. **Soap Dispenser:** When washing his hands, Mr. Wilfredo found that the soap dispenser was located at a height exceeding 48 inches, measured from its operable part to the floor. This required Mr. Wilfredo to stretch to use it, risking losing balance in his wheelchair.

11. The barriers at the **Exterior of SuperMax supermarket, located at 201 C. de la Cruz,** San Juan, relate directly to Mr. Wilfredo's substantial conditions and limitations, who depends on a wheelchair for mobility. The lack of an accessible and safe route to the entrance puts him at risk of accidents and additional injuries, as he cannot maneuver his wheelchair adequately. These barriers compromise his safety and autonomy, preventing him from accessing the property safely and with dignity.

12. The barriers at the **Interior of SuperMax supermarket, located at 201 C. de la Cruz,** San Juan, relate to Mr. Wilfredo's substantial conditions and limitations. Since he cannot exert much force to operate the door and access the establishment, he needs sufficient space to move through the supermarket aisles in his wheelchair. Similarly, he requires adequate space around the checkout to maneuver easily. Additionally, the counter heights exceeding 36 inches prevent him from conducting transactions autonomously. These barriers compromise his ability to access and use the supermarket safely and with dignity.

**13.** The Barriers at the **Restroom of SuperMax supermarket, located at 201 C. de la Cruz,** San Juan relate directly to Mr. Wilfredo's substantial conditions and limitations. As noted, Mr. Wilfredo depends on a wheelchair, so the lack of adequate space around the toilet, the incorrect location of the flush control, and the absence of support bars substantially prevent his use of the toilet. Additionally, the incorrect location of accessories like the toilet paper dispenser and soap dispenser further complicates their use, making it difficult for Mr. Wilfredo to use the restroom safely and independently.

**14.** The plaintiff will be affected in the future by the barriers that exist on the property because:

a.   Mr. Wilfredo is determined to return to the Supermax supermarket, located at 201 C. de la Cruz within the next week to buy foods of interest, known for their freshness and economic price, such as grapes, bananas, and other products.

b.  The variety of food products marketed by Supermax motivates him to visit regularly. As a regular customer, Mr. Wilfredo greatly appreciates the products offered by Supermax and enjoys the shopping experience at its facilities.

**15.** The plaintiff encountered each of the barriers mentioned above, interacted with them, and was affected during the visit due to his disability. For example, upon approaching the entrance in his wheelchair, Mr. Wilfredo encountered two outward-swinging doors. Each of these doors was exceptionally heavy and required much effort to open. Due to his paraplegia, Mr. Wilfredo has limited upper body and limb strength, so it was extremely difficult for him to open these heavy doors alone. He had to make several attempts, pushing repeatedly with his arms to try to open each leaf enough for his wheelchair to fit. However, due to the doors' great weight and outward-swinging design, he made several unsuccessful attempts until he finally managed to enter uncomfortably.

16. To resolve the exterior barriers, the following solutions can be implemented: construct an accessible and level route from the parking lot and sidewalk to the main entrance; install automatic sliding doors or lightweight swinging doors; place clear and visible signage indicating the accessible entrance location; and install gentle ramps to bridge any level differences between the sidewalk and entrance.

17. To resolve access barriers at the entrance of the Supermax Supermarket, automatic sliding doors or lightweight swinging doors that require little effort to open should be installed. This will allow Mr. Wilfredo's autonomous entry. Additionally, a gentle ramp connecting the sidewalk with the entrance is necessary to bridge any level differences.

18. To address the narrow aisles obstructed by products, the width of the aisles should be expanded to a minimum of 36 inches free of obstacles. Accessible routes within the store should also be identified with the international symbol of accessibility. Products and merchandise should be organized in another space to avoid invading the circulation space.

19. To improve the accessibility of service counters and cash registers: At least one checkout with a 36-inch-wide front space should be included to allow Mr. Wilfredo's lateral approach. This checkout must have a counter height of no more than 36 inches. Additionally, installing an auxiliary collapsible counter at an accessible height is recommended to facilitate payment transactions.

20. To improve restroom accessibility, the following solutions should be implemented: expand the space around the toilet to allow full maneuvers with a wheelchair; relocate the flush control to the open side of the toilet; install appropriate support bars near the toilet for a safe transfer; place the toilet paper dispenser at an accessible height ensuring continuous

flow; and adjust the soap dispenser height to no more than 48 inches from the floor to prevent Mr. Wilfredo from having to stretch dangerously.

21. The elimination of these barriers by complying with the ADA accessible design standards will allow Mr. Walilfredo to visit SuperMax supermarket, located at 201 C. de la Cruz, San Juan, autonomously, safely, and with dignity, on equal terms with any other person.

22. Mr. Wilfredo intends to return to the property once the architectural barriers have been removed. Only when all barriers related to his disability are removed can he return and have full, equal, dignified, and safe access.

23. Mr. Wilfredo reserves the right to return to the property at any time for any lawful purpose, even if it means subjecting himself to discriminatory conditions, experiencing inconveniences that non-disabled individuals do not experience, or risking his personal safety and physical integrity. Just as a non-disabled person may choose to subject themselves to hostile conditions that are not illegal, such as a long and interminable checkout line, the plaintiff will subject himself to the defendant's created unlawful discriminatory conditions, regardless of his dignity or even if it puts his physical integrity at risk.

24. Due to the current lack of information regarding the construction and alteration history of the property, it is alleged that: the property was constructed and/or altered after March 15, 2012; alternatively, the property was constructed or altered after January 26, 1993; alternatively, the property was constructed prior to January 26, 1993, but the defendant has the financial resources to ensure that the property complies with the most current building codes.

**D. Systematic Discrimination Against Mr. Wilfredo Due to the Presence of Architectural Barriers at Multiple Supermax Supermarkets**

**25.** In June 2024, Mr. Wilfredo identified various architectural barriers in several Supermax supermarkets in Puerto Rico through proactive investigations and personal experiences during his visits. Based on this knowledge, Mr. Wilfredo claims that Supermercados Maximo, Inc. is violating Title III of the ADA in the following ways:

25.1. **Parking and Accessibility:** Supermercados Maximo, Inc. maintains a policy of designing and constructing parking areas without clearly marked accessible spaces, or with worn-out markings that make them difficult to recognize. Additionally, adequate access routes from the parking lot to the main entrance of the establishments are not designed, thus failing to comply with ADA regulations.

25.2. **Non-Compliant Bathrooms:** The defendant provides bathrooms that do not meet ADA standards. These bathrooms are small and lack adequate space around the toilets, making it difficult and unsafe for individuals like the plaintiff to maneuver comfortably. Users must make significant efforts to use the facilities without the risk of falling due to the narrow space. Furthermore, many of these bathrooms lack the necessary grab bars to facilitate transfer.

25.3. **Counter Height:** Supermercados Maximo, Inc. has consistently failed to adhere to ADA standards regarding the height of their counters. These counters are designed and built at an inaccessible and inconvenient height for people with disabilities, particularly those who use wheelchairs, like Mr. Wilfredo. This negligence not only represents a significant challenge in terms of accessibility but also demonstrates the defendant's recurring disregard for ensuring their facilities are inclusive and comply with federal regulations.

**26.** Mr. Wilfredo felt discouraged from visiting **SuperMax - De Diego**, **located at 114 Ave De Diego San Juan, PR 00907-2345**, upon learning about the following barriers:

26.1.    **Parking:** The lines of the parking spaces designated as accessible are worn out, and the surface of the accessible parking area is uneven, with cracks and water flow, which poses a barrier for people using wheelchairs, like Mr. Wilfredo. Due to his knowledge of the barriers present at SuperMax, such as the worn-out lines in the designated accessible parking spaces and the uneven surface of the parking area, Mr. Wilfredo feels discouraged from visiting the store. The cracks in the pavement and the water accumulation pose a significant risk for someone using a wheelchair, making access to the store both unsafe and unnecessarily difficult for him. These barriers limit his ability to independently navigate the area, causing him to avoid visiting this location altogether.

26.2.    **Access Route and Ramp:** Mr. Wilfredo is aware that the handrail on the ramp of the access route at SuperMax does not extend at least 12 inches from its start, which makes it difficult for him to use the ramp effectively. As someone who relies on handrails for stability while maneuvering his wheelchair, this insufficient extension prevents him from safely and comfortably using the ramp. The lack of proper handrail support leaves him feeling vulnerable, as it compromises his safety when accessing the building. Because of this barrier, he feels deterred from visiting the SuperMax location, as it significantly limits his ability to enter the store without assistance.

26.3.    **Counters:** The counters at SuperMax - De Diego in the butcher, fish, and pastry sections are inaccessible due to their height exceeding 36 inches. This prevents

12

people with disabilities from properly observing and selecting products and hinders employees from providing adequate service. Consequently, Mr. Wilfredo decided not to visit the supermarket, feeling discouraged from enjoying the goods and services offered due to his awareness of these barriers. The inability to comfortably engage with the goods and services offered leaves him feeling excluded and dissuades him from enjoying what the store has to offer.

27. A similar situation occurred at **SuperMax – San Francisco Shopping Center, located at San Francisco Shopping Center 201 Ave. De Diego, Final San Juan, PR 00927-0000,** where Mr. Wilfredo was also discouraged from visiting after learning about the following barriers:

27.1. **Parking:** The designated accessible parking area has several deficiencies. The paint is worn out, making it difficult to recognize. The surface is uneven, cracked, and not level. There is no marked access route from the parking area to the property's entrance. The accessible parking aisles are not marked or labeled, and the parking spaces are not adjacent to an accessible route.

27.2. Mr. Wilfredo is well aware of the multiple deficiencies in the designated accessible parking area at SuperMax. The worn-out paint makes it nearly impossible to recognize the accessible spaces, and the surface is uneven, cracked, and not level, creating a hazardous environment for someone using a wheelchair like him. Additionally, the absence of a clearly marked access route from the parking area to the property's entrance further complicates his ability to navigate independently. The fact that the accessible parking aisles are neither marked nor labeled, combined with the parking spaces being far from an accessible route, significantly deters Mr.

Wilfredo from visiting the supermarket. These barriers not only make it difficult for him to enter the store safely but also send a clear message that his needs as a person with a disability have not been adequately considered. As a result, he feels discouraged from shopping at this SuperMax.

27.3.   **Counters:** Mr. Wilfredo is deterred from visiting SuperMax due to the significant barriers presented by the counters in the hot food, pastry, customer service, and butcher/fish sections. These counters, exceeding 36 inches in height, make it impossible for him to properly observe and choose products, as he cannot see or reach them from his wheelchair. Furthermore, the lack of designated spaces for a parallel or frontal approach, combined with the absence of under-counter space and inconsistent depth between accessible and non-accessible areas, creates additional difficulties in interacting with staff and receiving adequate service. These barriers make the experience at SuperMax unwelcoming and inaccessible, leaving Mr. Wilfredo discouraged from shopping there, as he feels unable to fully enjoy the products and services offered due to his disability.

27.4.   **Toilet Area:** Mr. Wilfredo feels particularly discouraged from visiting this SuperMax due to the numerous accessibility issues in the toilet area. The insufficient clear space around the toilet, being too close to the wall and obstructed by protruding fixtures, makes it nearly impossible for him to maneuver his wheelchair safely. The side grab bar, which is located more than 12 inches from the rear wall, is out of reach, and its usefulness is further compromised by the toilet paper dispenser, which obstructs the bar. To add to the difficulty, the baby changing station is placed too high, and a vertical bar above the side grab bar further violates

accessibility standards by reducing the necessary space. The toilet paper, placed too far from the toilet, is essentially unusable for a person in a wheelchair, further limiting his ability to use the restroom independently. These issues make it clear to Mr. Wilfredo that his needs as a person with a disability have not been taken into account, leaving him deterred from visiting the store and engaging in its services.

27.5. **Sink Area:** Mr. Wilfredo is aware that the pipes underneath the sink in the restroom at SuperMax are exposed, which prevents him from making a proper frontal approach in his wheelchair. Additionally, the soap dispenser and mirror are placed higher than the required height, making them inaccessible for someone with mobility limitations like him. These barriers create an environment where he cannot use basic facilities independently, further discouraging him from visiting the site. The lack of consideration for his needs as a person with disabilities reinforces his decision to avoid this location, as the inaccessibility severely limits his ability to comfortably and safely access the store's services.

28. Likewise, Mr. Wilfredo felt discouraged from visiting the **SuperMax - Plaza Caparra**, **located at 1498 Roosevelt Ave Carr#23 Ave Roosevelt Local #2 Guaynabo, PR 00968-0000**, upon learning about the following barriers:

28.1. **Counters:** Mr. Wilfredo is well aware that the counters at SuperMax - Plaza Caparra are inaccessible due to their height exceeding 36 inches and the lack of necessary space underneath for wheelchair or scooter users. This makes it extremely difficult and uncomfortable for him to access services or be properly seen by the staff behind the counters. In particular, the pastry, CaféMax, ACAI, butcher, and customer service areas are all affected by this barrier. While the latter three

sections have a lower black table with a bell on top, it fails to provide a solution—he cannot view the products nor receive the same level of service as other customers. This unequal experience, where his needs are overlooked, leaves Mr. Wilfredo feeling discouraged from visiting SuperMax, knowing that the barriers in place prevent him from enjoying the goods and services offered on equal terms.

28.2. **Bathrooms:** Mr. Wilfredo is also familiar with the inaccessibility of the bathrooms at SuperMax - Plaza Caparra for people with disabilities like himself. The toilet area lacks adequate clear space for wheelchair mobility. The grab bars are improperly placed: the rear bar does not meet the minimum length and is incorrectly positioned, the side bar is too far from the rear wall and obstructed by the toilet paper dispenser. Additionally, there is a non-functional vertical bar that obstructs the necessary space. The toilet paper is not correctly placed to ensure continuous flow, and the flush control is not on the open side of the toilet. These barriers substantially hinder their use for wheelchair users.

28.3. The barriers in the bathroom at SuperMax - Plaza Caparra profoundly affect Mr. Wilfredo by limiting his ability to use the facilities independently and safely. The lack of adequate clear space around the toilet makes it nearly impossible for him to maneuver his wheelchair, forcing him into uncomfortable and precarious positions. The improperly placed grab bars—especially the rear bar that is too short and the side bar that is too far from the rear wall—fail to provide the necessary support for him to transfer from his wheelchair to the toilet. Additionally, the obstruction caused by the toilet paper dispenser and the non-functional vertical bar further complicates his ability to access the side grab bar, making the transfer process

unsafe. The toilet paper's incorrect placement prevents him from easily reaching it, while the flush control being on the wrong side of the toilet forces him to strain or rely on others for assistance, compromising his dignity and independence. These barriers create an overall experience of frustration and exclusion for Mr. Wilfredo, significantly discouraging him from visiting SuperMax due to the lack of accessibility and the physical challenges these obstacles impose on him as a person with a disability.

28.4.    **Sink Area:** In the sink area, Mr. Wilfredo is aware that the pipes underneath the sink are exposed, and a metal trash can on the side wall limits the clear space around the sink. The mirror is located at a height exceeding 40 inches from its reflective base to the floor, and the soap dispenser is placed higher than 48 inches from its operable part to the floor. This setup does not allow full access for wheelchair users.

28.5.    The exposed pipes underneath the sink prevent him from making a safe and proper frontal approach in his wheelchair, as the pipes pose a risk of injury and discomfort. Additionally, a metal trash can positioned on the side wall further limits the clear space around the sink, making it even more challenging for him to maneuver into a comfortable position. The mirror, placed at a height exceeding 40 inches from its reflective base to the floor, is too high for Mr. Wilfredo to use effectively while seated in his wheelchair. Similarly, the soap dispenser, located more than 48 inches from its operable part to the floor, is placed too high for him to reach easily. This setup not only restricts his ability to perform basic hygiene tasks independently but also reinforces a sense of exclusion, as the facility is clearly not designed with his

needs in mind. As a result, Mr. Wilfredo feels discouraged from visiting this SuperMax location, knowing that these barriers limit his access and independence.

29. A similar situation occurred at **SuperMax – Santa María Shopping, located at Carr #177 Local #4 Bo Frailes Guaynabo, PR 00966-0000,** where Mr. Wilfredo feels discouraged from visiting after discovering the following barriers:

29.1. **Parking:** Mr. Wilfredo is aware that at SuperMax - Santa María Shopping, the absence of designated accessible parking spaces, along with the lack of proper dimensions for the spaces that do exist, creates a significant barrier for individuals with disabilities. Without these accessible parking spaces, Mr. Wilfredo cannot park his vehicle safely or navigate to the store's entrance with ease. This forces him to either risk parking in inadequate spaces, which makes it difficult to move around with his wheelchair, or avoid visiting altogether. The lack of accessible parking not only limits his physical access but also sends a clear message that the needs of people with disabilities have not been considered. This discourages him from visiting the shopping center, knowing that he would face unnecessary obstacles just to access the store.

29.2. **Counters:** Mr. Wilfredo is aware that the counters in the butcher, pastry, and customer service areas are inaccessible due to their height being over 36 inches. Mr. Wilfredo is significantly affected by the height of the counters in the butcher, pastry, and customer service areas at SuperMax, as they exceed 36 inches, making them inaccessible for individuals in wheelchairs like him. This barrier prevents him from properly observing the products displayed behind the counters, limiting his ability to make informed choices about what he wants to purchase. The high

counters also create a physical separation between him and the staff, making it difficult for him to communicate and receive service on equal terms as other customers. This lack of accessibility not only hinders his shopping experience but also leaves him feeling excluded and frustrated. As a result, he is discouraged from visiting the store, knowing that the environment does not accommodate his needs as a person with a disability.

29.3. **Toilet Area:** Mr. Wilfredo knows several accessibility deficiencies in the toilet area. It lacks a clear floor space of 60 inches measured perpendicularly from the side wall and 56 inches measured from the rear wall, and a black trash can further reduces this space. It also lacks both side and rear grab bars, and the toilet flush control is not located on the open side of the toilet. Mr. Wilfredo is impacted by the accessibility issues in the toilet area, where there is insufficient clear floor space due to a black trash can, making it difficult to maneuver his wheelchair. The lack of both side and rear grab bars prevents him from safely transferring to the toilet, and the flush control, placed on the wrong side, is hard to reach. These barriers make it nearly impossible for him to use the restroom independently, discouraging him from visiting the store.

29.4. **Sink Area:** The sink area presents several accessibility issues for Mr. Wilfredo. The exposed pipes underneath the sink pose a risk of collision with his legs while in a wheelchair, making it uncomfortable and unsafe. The mirror is placed too high, with the reflective base more than 40 inches from the floor, and the soap dispenser is also positioned above the acceptable height, making both difficult to use. Additionally, the toilet paper is not placed to ensure continuous flow, further

complicating accessibility. These problems make the area unusable for Mr. Wilfredo, discouraging him from visiting the store.

**30.** A comparable situation occurred in **SuperMax - Laguna Gardens**, **located at Ave. Baldorioty de Castro Centro Comercial Laguna Gardens Carolina, PR 00979-0000,** where Mr. Wilfredo has been discouraged from going after learning of the following barriers:

30.1.    **Counters:** Mr. Wilfredo knows that the counters at SuperMax - Laguna Gardens are inaccessible for him. The customer service counter is over 36 inches high, and although there is a lower black table with a bell, it only allows a view of the wall and does not facilitate product observation or provide adequate services. Similarly, the meat counter is at an inaccessible height, and the lower table does not allow viewing of the products. The pastry counter also exceeds 36 inches in height, preventing product observation and selection, and making it difficult for employees to provide proper service.

30.2.    **Toilet Area:** Mr. Wilfredo has noted that the toilet area at SuperMax - Laguna Gardens does not meet accessibility requirements. There is no clear floor space that allows for proper wheelchair mobility, and a white trash can along with the toilet paper dispenser further limits this space. Additionally, the rear wall grab bar is centralized and does not meet the necessary measurements. The side grab bar is more than 12 inches from the rear wall, and a vertical bar above it obstructs the required space. These barriers in the toilet area at SuperMax - Laguna Gardens significantly affect Mr. Wilfredo's ability to use the facilities independently. The lack of clear floor space prevents him from properly maneuvering his wheelchair,

while the white trash can and toilet paper dispenser further restrict his movement. The improperly placed rear wall grab bar, which is centralized and does not meet the required measurements, makes it difficult for him to safely transfer to and from the toilet. Additionally, the side grab bar being more than 12 inches from the rear wall, along with the obstructive vertical bar, leaves him without the necessary support for balance. These issues create a frustrating and unsafe environment, discouraging Mr. Wilfredo from visiting this location.

30.3. **Sink Area:** In the sink area, the pipes are exposed, and a white trash can beside the sink reduces the clear floor space, obstructing the area that should be 30 inches wide and 48 inches long. Additionally, bathroom fixtures such as the mirror and soap dispenser are at an inaccessible height for a person in a wheelchair like Mr. Wilfredo. These barriers discourage Mr. Wilfredo from visiting SuperMax - Laguna Gardens, as they significantly hinder his ability to access and utilize the facilities comfortably and independently.

31. Mr. Wilfredo felt discouraged from visiting **SuperMax - Bayamón**, **located at Ave. Magnolia Esq. Calle 15 Bayamón, PR 00956-0000**, due to the following barriers:

31.1. **Parking Area:** The parking area at SuperMax presents significant challenges for Mr. Wilfredo due to its irregular, cracked, and uneven surface, making it difficult for him to maneuver his wheelchair safely. The worn-out paint marking the accessible parking space and nearly erased lines make it hard to identify the access aisle, causing confusion and frustration. Additionally, the faded signs with the international accessibility symbol further complicate the process of locating

appropriate parking. These barriers discourage Mr. Wilfredo from visiting the store, as they limit his ability to access the facility safely and independently.

31.2.  **Access Route and Ramp:** The accessibility deficiencies in the access route significantly impact Mr. Wilfredo's ability to enter SuperMax independently. The uneven asphalt and cracked ramp create an unsafe surface, making it nearly impossible for him to navigate the area in his wheelchair without risk of injury or becoming stuck. The handrail, which does not extend the required 12 inches from the start of the ramp, offers inadequate support, leaving him without the necessary stability when maneuvering onto the ramp. These barriers hinder his mobility, discourage him from visiting the location, and make him feel excluded from accessing the store safely and comfortably.

31.3.  **Counters:** The height of the meat, pastry, and customer service counters, each exceeding 36 inches, significantly affects Mr. Wilfredo's ability to shop independently at the supermarket. These elevated counters prevent him from viewing and selecting products comfortably from his wheelchair, making it difficult to interact with the staff behind the counter. This lack of accessibility creates a barrier to receiving adequate service and conducting his transactions autonomously. As a result, Mr. Wilfredo feels excluded from fully participating in the shopping experience, further discouraging him from visiting the store.

31.4.  **Toilet Area:** The lack of adequate free space in the toilet area at SuperMax significantly affects Mr. Wilfredo's ability to use the restroom independently. The toilet's close proximity to the surrounding walls, combined with the black trash can and sink nearby, restricts his wheelchair mobility. The absence of a rear grab bar

and the improper placement of the side grab bar, more than 12 inches from the rear wall, make it difficult for him to transfer safely. Additionally, the toilet paper's location above the toilet disrupts its correct use, and the flush control, not being on the open side, further complicates access. These barriers make it challenging for Mr. Wilfredo to use the restroom comfortably, discouraging him from visiting this location.

31.5. **Sink Area:** The free floor space around the sink is limited due to the presence of a black trash can right next to it, which is an obstacle that reduces the necessary free space. Additionally, the sink is very close to the wall and the bathroom door, making lateral approach by a wheelchair difficult.

**32.** A comparable situation occurred, Mr. Wilfredo felt discouraged from visiting **SuperMax - Bayamón**, located at Centro Comercial Bayamón Gardens, Bayamón, PR 00957-0000, due to the following barriers:

32.1. **Parking Area:** Mr. Wilfredo knows that the parking area has an irregular, cracked, and uneven surface. Additionally, the paint marking the accessible parking space is completely worn out, and the lines delineating the accessible spaces are almost erased, making it difficult to identify the access aisle. Similarly, the signs with the international accessibility symbol in the parking area are completely worn out, making them hard to recognize easily.

32.2. **Access Route and Ramp:** Mr. Wilfredo is familiar with the accessibility deficiencies in the access route. The asphalt is uneven, and the ramp has cracks that make it unusable. Furthermore, the handrail on the ramp does not extend at least 12

inches from the start, as required. This hinders the movement of people in wheelchairs.

32.3. **Counters:** Mr. Wilfredo has noted that the meat, pastry, and customer service counters in the supermarket have accessibility deficiencies. Each of these counters is higher than 36 inches, which prevents people with disabilities from properly viewing and selecting products. Additionally, this makes it difficult for them to be adequately served by the employee behind the counter. This represents a significant barrier for wheelchair users to independently and autonomously conduct their transactions.

32.4. **Toilet Area:** The toilet area presents several accessibility deficiencies. There is not enough space around the toilet, the side grab bar is too far from the rear wall and obstructed by toilet paper, which is located above it. The rear grab bar is obstructed by a spray bottle, failing to meet the required 12 inches between the grab bar and protruding objects. Additionally, the toilet paper is not positioned to ensure continuous flow.

32.5. **Sink Area:** Mr. Wilfredo knows that the free floor space around the sink is limited due to the presence of a black trash can right next to it, which is an obstacle that reduces the necessary free space. Additionally, the sink is very close to the wall and the bathroom door, making lateral approach by a wheelchair difficult. The mirror and soap dispenser are at an inaccessible height, and the black trash can located right below the soap dispenser further hinders access.

33. On the other hand, Mr. Wilfredo felt discouraged from **SuperMax - Los Filtros**, located **at Carr 177 KM 2.0 Bayamón, PR 00959-0000**, due to the following barriers:

33.1. **Parking Area:** Mr. Wilfredo knows that there are no accessible parking spaces or signage to distinguish them. Additionally, no parking spaces meet the necessary dimensions to be considered accessible.

33.2. **Counters:** The bakery and pastry, customer service, and florist counters present accessibility barriers due to their height exceeding 36 inches. This prevents people with disabilities from properly viewing and selecting products, and they cannot be adequately served by the employee behind the counters.

33.3. **Cafeteria Area:** Mr. Wilfredo has noted that the cafeteria tables have a metal base that prevents people in wheelchairs from making proper frontal approaches, and there are no accessible tables for wheelchair users.

33.4. **Toilet Area:** In the toilet area, there is no clear floor space of 60 inches that would allow for proper wheelchair maneuvering. The side grab bar is obstructed by toilet paper located above it, and there is a vertical bar above the side grab bar that obstructs the necessary space, failing to meet the required 12 inches between the grab bar and protruding objects. Additionally, the toilet paper is not positioned to ensure continuous flow.

33.5. **Sink Area:** The free floor space around the sink is limited due to the presence of a gray trash can, which reduces the free space required. Furthermore, the pipes under the sink are exposed, and the mirror and soap dispenser are at an inaccessible height for wheelchair users like Mr. Wilfredo. These barriers discourage Mr. Wilfredo from visiting SuperMax - Dorado, as they significantly hinder his ability to access and utilize the facilities.

**34.** Mr. Wilfredo is aware that the **SuperMax - Dorado, located at Centro Comercial Dorado del Mar, Dorado, PR 00646-0000**, has architectural barriers that violate the ADA. This has discouraged him from visiting, as he knows from investigations that the counter height is excessively high, making it inaccessible for wheelchair or scooter users:

34.1.  **Access Route:** Mr. Wilfredo knows that the access route is irregular, with cracked and uneven asphalt, failing to meet accessibility standards and making it difficult for people who depend on wheelchairs for mobility. The rough surface increases the physical effort required to push his wheelchair, causing discomfort and making it difficult to maintain balance. He feels unsafe navigating this area, as the cracks in the asphalt could potentially cause his wheelchair to get stuck or tip over. This unsafe environment deters Mr. Wilfredo from visiting the store, as it prevents him from accessing the entrance without significant difficulty, further reinforcing his sense of exclusion from spaces that should be accessible to all.

34.2.  **Counters:** Mr. Wilfredo knows that the counters at SuperMax, which exceed 36 inches in height, create a significant accessibility barrier. For him, as someone who uses a wheelchair, the elevated counters prevent him from properly viewing the products on display, limiting his ability to make informed choices. Additionally, the height makes it difficult for him to interact comfortably with the employees behind the counter, hindering communication and service. This applies to the bakery, pastry, and customer service areas, where the lack of accessible counters makes Mr. Wilfredo feel marginalized and unable to engage in the same shopping experience as other customers. The barrier discourages him from visiting the store, knowing he cannot independently browse or receive adequate service.

26

34.3. **Toilet Area:** These barriers significantly affect Mr. Wilfredo's ability to use the restroom independently. The lack of clear floor space—60 inches from the side wall and 56 inches from the rear wall—limits his wheelchair maneuverability, making it difficult to position himself comfortably and safely. The presence of the white trash can further reduces the available space, creating an additional obstacle. The side grab bar, obstructed by the toilet paper placed above it, limits its effectiveness in providing support, while the absence of a rear grab bar makes it even harder for Mr. Wilfredo to safely transfer from his wheelchair to the toilet. These barriers force him to rely on assistance, stripping him of his independence and discouraging him from using the restroom facilities at this location.

34.4. **Sink Area:** The barriers in the sink area at SuperMax significantly affect Mr. Wilfredo's ability to use the restroom facilities. The exposed pipes beneath the sink prevent him from making a proper frontal approach in his wheelchair, as they pose a risk of collision and discomfort. The mirror, positioned at a height greater than 40 inches, is too high for him to use effectively while seated, preventing him from seeing his reflection. Additionally, the soap dispenser, located more than 48 inches from the floor, is placed out of reach, making it difficult for Mr. Wilfredo to access basic hygiene necessities. These accessibility issues frustrate him and discourage him from using the facilities, as they compromise his independence and comfort.

35. Likewise, Mr. Wilfredo felt discouraged from visiting **SuperMax - El Paseo Dorado**, **located at Carr. 696 Esq. Ave. Jose Efron Paseo Del Plata Shopping Village Dorado, PR 00646-0000,** due to the following barriers:

35.1. **Parking Area:** Mr. Wilfredo knows that the paint designating the accessible parking spaces is completely worn out, and the international accessibility symbol signage is missing, making recognition difficult. The surface of the parking area is irregular, cracked, and uneven. Additionally, there is no marked access route from the parking area to the entrance of the property. The aisles of the designated accessible parking spaces are not marked, and the parking spaces are not adjacent to an accessible route.

35.2. **Counters:** The counters in the pastry and coffee area, as well as the customer service counter, are inaccessible because their height exceeds 36 inches, preventing people with disabilities from properly viewing and selecting products and being adequately served. Additionally, the requirements for an accessible portion of 36 inches high by 36 inches wide, the same depth for the accessible and non-accessible part, a minimum space for parallel or horizontal approach, and an under-counter space for frontal approach are not met. This lack of accommodation makes the experience difficult for wheelchair users.

35.3. **CafeMax Area:** Mr. Wilfredo has noted that the tables in the CafeMax area do not have sufficient space underneath to comfortably accommodate knees and feet, making it impossible to sit frontally due to the cylindrical base under the table. Additionally, the proximity between tables makes it difficult for wheelchair users to approach and move between them.

35.4. **Bathroom Door:** Mr. Wilfredo is familiar with the lack of proper signage indicating the location of the accessible bathroom for people with disabilities. Additionally, the bathroom door handle should be easily operable with one hand without requiring a strong grip or complicated wrist twisting.

35.5. **Toilet Area:** The toilet area presents several accessibility deficiencies. There is not enough clear floor space to allow T-shaped movements, and the space is further reduced by the proximity of a black trash can, toilet paper, and a black dispenser. The side grab bar is too far from the rear wall and obstructed by the toilet paper and black dispenser, without adequate space between the bar and protruding objects. Additionally, above the side grab bar, there is a vertical bar that obstructs the required space.

35.6. **Sink Area:** Mr. Wilfredo has observed that the sink has a base that obstructs frontal approach, preventing its proper use. The hand dryer is located at a height greater than 48 inches from its operable part to the floor, and the mirror is placed at a height greater than 40 inches from its reflective base to the floor, making them unusable for wheelchair users. These barriers discourage Mr. Wilfredo from visiting SuperMax - Villablanca Caguas, as they significantly hinder his ability to access and utilize the facilities comfortably and independently.

36. A similar situation occurred at Mr. Wilfredo felt discouraged from visiting **SuperMax - Villablanca Caguas, located at Ave Jose Garrido, Bo Pueblo Caguas, PR 00725-0000**, due to the following barriers:

36.1. **Parking Area:** Mr. Wilfredo knows that the accessible parking area is inadequate. The paint and boundary lines are faded, and the surface is uneven, with cracks and irregularities. There is no designated access route from the parking area to the property entrance, and the parking spaces are not situated near an accessible path. The signage lacks the International Symbol of Accessibility and does not meet the required height, visual, and tactile standards.

36.2. **Service Counters:** Mr. Wilfredo is aware that the counters in the pastries, meats, hot food (CafeMax), and customer service areas are too high, exceeding 36 inches, making them inaccessible. This height barrier prevents people with disabilities from receiving proper service from the staff. Furthermore, the counters do not provide a portion that is 36 inches high by 36 inches wide. The accessible part of the counter should have the same depth as the non-accessible part, with enough space for a parallel or horizontal approach, and under-counter space for a frontal approach. Without these features, wheelchair users face significant service limitations.

36.3. **Toilet Area:** Mr. Wilfredo has noted that the space around the toilet is insufficient for maneuvering a wheelchair, further constrained by a white trash can. The side grab bar is positioned too far from the rear wall and is obstructed by the toilet paper dispenser, which is attached to the lower part of the bar, leaving inadequate space between the bar and other objects.

36.4. **Sink Area:** Mr. Wilfredo is familiar with the issues in the sink area. The sink has exposed pipes, and the mirror is mounted higher than 40 inches from its reflective base to the floor, making it unusable for individuals in wheelchairs.

**37.** The defendant is urged to implement the necessary adjustments to the parking areas, access routes, restrooms, and counters of the establishment to comply with ADA accessibility standards for people with disabilities. Adhering to these standards is crucial to ensure equal access and comfort for everyone, thereby preventing discrimination against individuals with disabilities.

**38.** Title III of the ADA prohibits discrimination based on disability by any person who owns, leases, or operates a place of public accommodation. 42 U.S.C. § 12182(a). "In the context

of existing facilities, discrimination includes "*a failure to remove architectural barriers ... where such removal is readily achievable*". <u>Chapman v. Pier 1 Imports (U.S.) Inc</u>., 631 F.3d 939, 945 (9th Cir. 2011) (citing 42 U.S.C. § 12182(b)(2)(A)(iv)).

**39.** A disabled person has standing to bring an ADA claim for injunctive relief when they encounter or become aware of alleged barriers that interfere with their full and equal enjoyment of a facility. Id. at 947. When a disabled person has standing based on one or more alleged barriers, they may conduct discovery to determine if any other barriers affecting their disability existed at the time the claim was brought. <u>Doran v. 7-Eleven, Inc.</u>, 524 F.3d 1034, 1043-44 (9th Cir. 2008). "*This list of barriers would then, in total, constitute the factual underpinnings of a single legal injury, namely, the failure to remove architectural barriers in violation of the ADA*". Id.

### III.    CLASS ACTION ALLEGATIONS

**40.** The preceding allegations are the individual claims of Mr. Wilfredo. However, the allegations below are made by Mr. Wilfredo not only in representation of his own interests but also on behalf of other similarly situated individuals, in accordance with Rule 23(b)(2) of the Federal Rules of Civil Procedure.

**41.** Each member of the class is a "qualified person with a disability" and/or a person with a "disability" as defined by 42 U.S.C. § 12131(2) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, et seq. The class is so numerous that the joinder of all members is impracticable, and resolving their claims through a class action rather than individual lawsuits will benefit both the parties and the court. The class consists of tens of thousands of individuals with mobility disabilities.

42. The Defendant has failed, and continues to fail, to comply with the ADA in its implementation of the establishment's administrative methods, policies, procedures, and practices concerning the construction, remediation, and maintenance of restrooms, parking areas, access routes, access ramps, sales counters, and customer service counters, which are essential for providing accessibility within the establishment's premises.

43. The Defendant has not adopted or enforced suitable administrative methods, policies, procedures, and practices to ensure compliance with the ADA. Consequently, the establishment fails to ensure nondiscrimination against individuals with mobility disabilities and does not provide equal access to the restaurants for these individuals.

44. The ADA violations detailed herein have harmed all members of the proposed class, infringing upon their rights in a similar manner.

45. The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole. Class claims are brought for the purposes of obtaining declaratory and injunctive relief only.

46. The claims of the Named Plaintiffs are typical of those of the class, as they arise from the same course of conduct engaged in by the Defendant. The relief sought herein will benefit all class members alike.

47. The Named Plaintiff will fairly and adequately represent the interests of the class. He has no interests adverse to the interests of other members of the class and has retained counsel who is competent and experienced in litigating actions under the ADA in Puerto Rico.

48. The requirements of Rule 23 of the Federal Rules of Civil Procedure are met with regard to the proposed class in that:

48.1. The class is so numerous that it would be impractical to bring all class members before the Court;

48.2. There are questions of law and fact common to the class;

48.3. The Named Plaintiffs' claims for declaratory and injunctive relief are typical of the claims of the class;

48.4. The Named Plaintiffs will fairly and adequately represent the common interests of the class and are represented by attorneys who are experienced in law reform class actions and disability rights issues in this case; and

48.5. The Defendant has acted or refused to act on grounds generally applicable to the class.

49. Every officer of the Judicial Branch and their family members until the fifth degree of consanguinity and third of relationship by marriage is excluded from the class. Also, all the employees of the Defendant (including affiliate subsidiaries or parent companies) are excluded from the definition of class. Also excluded are the attorneys of the defendant (including affiliate, subsidiary or parent companies). Also excluded are the family members of the attorneys of the Defendant (including affiliate, subsidiary and parent companies) until the fifth grade of consanguinity and third by relationship by marriage.

50. The court can take judicial notice of the accessible design standards applicable to the parking through the official site of the federal government, accessible in: https://www.ada.gov/law-andregs/design-standards/.

51. Mr. Wilfredo is an appropriate representative of the proposed class for the following reasons:

    a.  He has a substantial limitation in movement;

b.  He uses a wheelchair as a result of this substantial limitation;

c.  He is interested in visiting SuperMax supermarkets located in Puerto Rico;

d.  His interest in visiting SuperMax supermarkets serves a lawful purpose;

e.  He could greatly benefit from the availability of accessible restrooms, counters, parking spaces, routes, and ramps at SuperMax supermarkets that fully comply with the provisions of the Americans with Disabilities Act (ADA) and its applicable regulations. Accessible parking spaces, ramps, and access routes are crucial for facilitating mobility and access in both public and private spaces. Likewise, accessible counters and restrooms are essential for use by individuals with disabilities. The Americans with Disabilities Act Accessibility Guidelines (ADAAG) establish the design and construction criteria to ensure these spaces are inclusive and accessible. For instance, if the parking facilities do not comply with ADAAG, Mr. Wilfredo and others in similar situations could be affected in the following ways: Individuals who use wheelchairs or have mobility limitations may struggle to find a parking spot that is wide enough to allow safe entry and exit from their vehicles; If accessible parking is not located near the entrance, individuals may be forced to travel long distances, which can be tiring and challenging; Without proper signage and designated parking spaces, individuals in wheelchairs or with mobility limitations may face the risk of accidents with other vehicles or pedestrians.

f.  Similarly, if there is no accessible route from the accessible parking to an accessible entrance and the implementation of ramps in compliance with ADAAG, Mr. Wilfredo and others in similar situations could face the following issues: Physical

obstacles such as stairs, uneven surfaces, inclines, or poorly placed urban furniture can hinder mobility; If the route does not have a solid, stable, and non-slip surface, individuals in wheelchairs may find it difficult to move around and could risk falling or getting stuck; Non-compliant slopes and ramps can make it challenging for wheelchair users to navigate steep areas, increasing the risk of falls or accidents.; Lack of accessibility can cause fatigue and frustration as individuals are forced to overcome multiple barriers and difficulties to access the establishment.

g. If counters do not meet ADAAG standards, it impedes visibility from a wheelchair and personal interaction with staff behind the counter. If restrooms do not meet ADAAG standards, there may not be sufficient space or the necessary support bars might be nonexistent or non-compliant, making it difficult to transfer from the wheelchair to the toilet. This makes basic activities like using the restroom a significant challenge for individuals in wheelchairs.

52. The class is so numerous that the accumulation of all the residents of Puerto Rico that meet the definition of the class is impracticable, because it includes hundreds or thousands of people in similar situations who, in summary, would benefit from compliance with ADAAG in accessible parking, routes, ramps, counters, and restrooms. These elements are fundamental to ensure that people in wheelchairs or with mobility limitations can access public and private spaces in a safe, comfortable, and respectful manner, without facing unnecessary barriers in the places in question.

53. There are common issues of fact or law to the class because it deals with the same federal norm applicable in the same specific place: the accessible parking and the route from the parking to the entrance, the restrooms, and the counters of the restaurants.

54. The representative's claims are typical of the class claims or defenses because, by defending his own interests regarding accessible restrooms, parking, routes from parking to the entrance, and restaurant counters, Mr. Wilfredo will also defend the interests of the entire class. This class consists of individuals who use wheelchairs or have substantial limitations in movement.

55. Mr. Wilfredo will protect the interests of the class because he is an experienced litigant in defending rights similar to those in question in this case. Additionally, Mr. Wilfredo's legal representation is provided by an attorney who is likely the most active in this jurisdiction under Title III of the ADA, advocating for and protecting victims of architectural barriers in both state and federal court. Therefore, Mr. Wilfredo will adequately represent the interests of the class.

## IV.    LEGAL REMEDIES REQUESTED

**WHEREFORE**, the plaintiff, Wilfredo Torres Mass, very respectfully requests the following legal remedies:

a.  Regarding the SuperMax at 201 C. de la Cruz, San Juan, mentioned in this complaint, a permanent injunction in favor of Mr. Wilfredo in accordance with 42 USC §12188 (a)(2) and 28 CFR §36.504 (a) ordering the defendant to eliminate the architectural barriers that exist in the exterior, interior, and restrooms of the property by complying with the applicable accessible design guidelines according to their date of construction and alteration. If the property existed on January 26, 1993, it must be altered to comply with the most recent accessible design guidelines promulgated under the ADA to the maximum extent economically feasible for the defendant, either immediately or through a long-term transition plan toward full compliance. If the creation of a transition plan toward

compliance is not economically feasible, or if the necessary changes are not structurally possible, it is requested to order that access to goods and services be made available through alternate methods in accordance with 42 U.S.C.§ 12182(b)(2)(A)(v).

b.  Regarding the allegations related to the proposed class, limited to accessible restrooms, parking spaces, routes, ramps, and counters, it is requested that the class be certified and a permanent injunction be issued in accordance with 42 USC §12188 (a)(2) and 28 CFR §36.504(a).

c.  A permanent statutory injunction pursuant to 42 USC § 12188(a)(2) and 28 CFR §36.504(a) ordering the defendant to eliminate the existing discriminatory policies and practices that currently prevent the elimination of architectural barriers and/or policies and practices that prevent the provision of reasonable accommodations necessary for equal treatment in the restaurants.

d.  In case the defendant continues its discriminatory practices, it is requested that, pursuant to 42 USC §12188 (a)(2) and 28 CFR §36.504, the properties be ordered closed as a precautionary measure to stop the discriminatory condition until it has been irrefutably certified to the satisfaction of the court that the discrimination has been eliminated;

e.  Nominal damages for one dollar.

f.  Attorney's fees, costs, and litigation expenses.

g.  The provision of any other remedy that is fair and appropriate, in law or equity, and that has not been expressly requested but is appropriate as a matter of law.

**RESPECTFULLY SUBMITTED**.

**Dated**: September 20, 2024.

**VELEZ LAW GROUP LLC**
Civil Rights Division

s/José Carlos Vélez Colón
José Carlos Vélez Colón
USDC-PR 231014

RR 18 BOX 1390 #311
San Juan, PR 00926-9821

E:    vlg@velezlawgroup.com
T:    (787)-422-1881

**PLAINTIFF'S ATTORNEY**